[No. C. D. 2472. En Banc. February 28, 1963.]

*In the Matter of the Disciplinary Proceeding Against* NEAL CLARK, *an Attorney at Law.**

*Reported in 379 P. (2d) 354.

*T. M. Royce*, for Board of Governors.

*Philip Lande*, for respondent.

OTT, C. J.—March 20, 1961, Neal Clark, an attorney practicing law in this state, was served with a disciplinary complaint by the Washington State Bar Association, charging him with three counts of conduct in violation of the Canons of Professional Ethics and his oath of attorney. His answer denied the charges and requested that they be dismissed. After trial upon the issues thus joined, the hearing panel entered findings of fact and conclusions sustaining all of the charges, and recommended disbarment. February 12, 1962, the Board of Governors, after it had reviewed the record, approved and adopted the panel's findings, conclusions, and recommendations as to counts 1 and 2, but disapproved the panel's findings relative to count 3 and recommended that it be dismissed.

Count 1 of the disciplinary complaint charged, *inter alia*, that Neal Clark had secured a deed to the residence property of Della J. Harper, aged 95, who was mentally and physically ill, upon his promise to furnish her care and support for the rest of her life; that he had not kept his promise to support, and that he reconveyed the property to the legal representatives of the grantor only after a trial to set aside the deed was had upon the merits, and the court had orally announced its decision that the deed would be set aside.

The record discloses that Della J. Harper owned and occupied a home in Kent, Washington, valued at approximately $13,000. July 15, 1954, she executed and delivered to Fred W. Schmidt a deed conveying the residence prop-

erty to him. The consideration for the deed was that Schmidt agreed, in writing, to support her for the rest of her life, as follows:

"Now, THEREFORE, Second party [Fred W. Schmidt] covenants and agrees to and with the first party [Della J. Harper] that said first party may continue to live with the second party in said premises during the remainder of first party's life, and during all that time, the second party will furnish to the first party the same standard of comfort and care and the same or equally adequate accommodations for her personal use and comfort in the said premises as first party has heretofore had, and will provide the first party adequate food, supplies and other necessities to her well-being, health and comfort, and second party further covenants and agrees to furnish to first party, at second party's expense, normal medical care and medication, necessary for the first party during the remainder of her life, and second party further covenants and agrees that upon the death of the first party that second party will furnish for the first party a decent burial in accordance with the first party's state in life, and will pay funeral expenses and cemetery expenses therefor."

Fred Schmidt did support Della J. Harper until his death.

October 17, 1957, Schmidt executed a will, prepared by Neal Clark, in which all of his property was devised and bequeathed to Della J. Harper. November 1, 1957, Fred Schmidt became critically ill and was taken to the hospital by Neal Clark, who personally guaranteed payment of his hospital expenses. Fred Schmidt died November 7, 1957. Neal Clark presented Fred Schmidt's will, in which Della J. Harper was the sole beneficiary, for probate. Josephine W. West was appointed executrix. The estate was inventoried and appraised in the sum of $12,325.

November 18, 1957, Neal Clark obtained a deed from Della J. Harper to her residence property, which she had reacquired as the sole beneficiary of the will of Fred Schmidt, deceased. The consideration expressed in the deed was "for and in consideration of agreement, assumption of, and the performance by grantee [Neal Clark] of the agreement dated July 15, 1954 between grantor [Della J. Harper] and Fred W. Schmidt, deceased."

The next day, Neal Clark prepared a petition for appointment of Ruth B. Morris as guardian for Della J. Harper, in which he alleged her to be an incompetent person and incapable of managing her affairs. Josephine West, the executrix of the Fred Schmidt estate, joined in the petition. At the hearing on the petition, December 2, 1957, the only witness who testified to Della J. Harper's incompetency was Neal Clark. She was adjudicated to be an incompetent person, and Ruth B. Morris was appointed her guardian.

January 15, 1958, the guardian filed an inventory of the assets of the ward's estate, in which the residence property was valued at $11,500. March 17, 1958, Neal Clark recorded his deed conveying to him the residence property of Della J. Harper.

July 22, 1959, Della J. Harper died. August 12, 1959, Josephine West, in her capacity as executrix of the estates of Fred Schmidt and Della J. Harper, commenced an action to set aside the Harper deed, alleging that Neal Clark had fraudulently overreached his client, Della J. Harper. Neal Clark answered the complaint, denied the allegations of fraud and overreaching, and alleged that he had performed the Fred Schmidt agreement by arranging for Della J. Harper's care and support during her lifetime. He further affirmatively alleged that he had not been paid for his services as attorney for the estate of Fred Schmidt and for the guardianship estate of Della J. Harper, and that "the conveyance from the said Della J. Harper was given in payment for all services or costs and expenses to be incurred by defendants, in performance of the Schmidt agreement." The answer prayed, *inter alia*, that the complaint be dismissed, and that defendant Clark be paid for professional services rendered.

Upon the issues thus joined, the cause was heard by the court, and, at the close of the evidence, the court orally announced that findings of fact, conclusions of law, and judgment could be prepared setting aside the deed. Thereafter, Neal Clark requested leave of the court to reconvey the premises to the executrix, and that the court enter an

order of dismissal. The request was granted, the property reconveyed, and the cause dismissed.

The second count of the complaint charged that Neal Clark had obtained support for Della J. Harper through the Department of Public Assistance for King County by knowingly concealing from the department the existence of the deed to himself and his promise to support Della J. Harper.

The record discloses that, on November 4, 1957, during the time Fred Schmidt was a patient in the hospital, Neal Clark, signing as "agent for Della J. Harper," made an application in her behalf for public assistance, alleging that Della J. Harper was over 95 years of age, and "incapable of self care and indigent." The accompanying statement of her resources indicated that she had no property. Mr. Clark was informed that financial assistance could not be granted until a guardian was appointed for Della J. Harper. As above indicated, a petition for guardianship was filed November 19, 1957, and, on December 2, 1957, Ruth B. Morris was appointed guardian for Della J. Harper. Thereafter, on December 4, 1957, the original application for assistance, unaltered except for the addition of Ruth B. Morris' signature as guardian, was renewed.

In the meantime, on November 18, 1957, Neal Clark had obtained the deed from Della J. Harper. The December 4, 1957, application for public assistance did not disclose, in the statement of Della J. Harper's resources, that she had a life estate in the residence property in which she resided; that Neal Clark had agreed to support her for the remainder of her life, and that she was the sole beneficiary of the assets of the Fred Schmidt estate.

The department, based upon the information contained in the application, commenced making public assistance payments for the care and support of Della J. Harper on January 1, 1958, and continued the payments until her death on July 22, 1959, expending a total of approximately $3,000.

Count 3 of the complaint charged Neal Clark with entering into a conspiracy to extort funds from a former client

by falsely accusing him of having improper relations with a married woman other than his wife. The hearing panel, relying only upon the testimony of the client and his wife, found as a fact that the charge had been sustained. The Board of Governors, in its review of the record, determined that the charge had not been sustained and recommended that it be dismissed.

The disclosure, in this opinion, of the sordid details of the accusations and counteraccusations, would serve no useful purpose. Our review of the record discloses that all of the witnesses, other than the client and his wife, repudiated their previous statements relative to Neal Clark's participation in the alleged extortion. The testimony of the client and his wife established that neither of them had any personal knowledge of the alleged conspiracy, other than the fact of the service of a summons and complaint upon them. Their testimony relative to Neal Clark's participation in the conspiracy was based upon hearsay and upon statements which had been repudiated by those who made them. In our opinion, the evidence which the hearing panel relied upon was not sufficient to establish the elements of a conspiracy to extort.

With reference to count 3, we accept the recommendation of the Board of Governors that the charge be dismissed.

With reference to counts 1 and 2, the conclusions and recommendations of the hearing panel, as approved by the Boad of Governors, were as follows:

"(1) That respondent [Neal Clark] gave no consideration for the deed he obtained from Della J. Harper dated November 18, 1957; that he failed to keep his promise and to support and provide for her in accordance with the recited consideration of such deed; that in obtaining said deed he overreached and took advantage of Miss Harper, a ninety-five year old woman who was then hard of hearing, practically blind and mentally incompetent; . . . His acts in these regards involved moral turpitude and bordered upon dishonesty and corruption, as referred to in Rule 10 (6), Discipline of Attorneys, 34A Washington, page 183; Rule 1A, Rules for Discipline of Attorneys, Wash. Dec., Volume 157, No. 2A, page 32, and were in violation of his oath as an

attorney. Rule 6 of Admission to Practice, 34A, Wash., page 164.

"That in this connection, he also violated Canons 10 and 11 of the Code of Professional Ethics, as found in 34A, Wash., 129.

" . . .

"(3) That in preparing and presenting the application for assistance for Miss Harper, respondent willfully perpetrated a fraud upon the King County Welfare Department, resulting in the Department paying a minimum of $3,000.00 in support of Miss Harper, and respondent's acts in this connection involved moral turpitude within the meaning of the provisions of Rule 10 (6), Discipline of Attorneys, 34A Wash. 183, and Rule 1A, Rules for Discipline of Attorneys, Wash. Dec., Volume 157, No. 2A, page 32.

" . . .

"(5) The evidence submitted to the Hearing Panel proves conclusively that respondent was guilty of a course of conduct demonstrating unfitness to practice law and gross incompetency in the practice of law. Rule 1M, Wash. Dec., Volume 157, No. 2A, page 33; Rule 10 (10), 34A Wash., page 184.

"RECOMMENDATIONS

"(1) Based upon its findings as to Item One of the complaint, the Hearing Panel recommends that Neal Clark, this respondent, be permanently disbarred as an attorney of the State of Washington;

"(2) Based upon its findings as to Item Two of the complaint, the Hearing Panel recommends that Neal Clark, this respondent, be permanently disbarred as an attorney of the State of Washington."

We adopt the findings and conclusions of the hearing panel, as approved by the Board of Governors, relative to counts 1 and 2. Do these findings and conclusions warrant the penalty recommendations of the hearing panel and the Board of Governors that Neal Clark be disbarred?

In *In re Simmons*, 59 Wn. (2d) 689, 706, 369 P. (2d) 947 (1962), we said:

" . . . In making this determination, we consider the seriousness and circumstances of the offense and these standards: (1) Punishment of the offender, which should be sufficient to prevent reoccurrence, (2) a penalty sufficient to deter other practitioners from engaging in such conduct, and (3) punishment sufficient to restore and maintain

respect for the honor and dignity of the profession, and to assure those who seek the services of attorneys at law that the penalties for unprofessional conduct will be strictly enforced. [Citing cases.]"

Applying these standards to the instant case, we are concerned with the circumstances surrounding the offenses.

The mitigating circumstances urged by Neal Clark are, first, that he voluntarily guaranteed payment of the hospital expenses of Fred Schmidt. The guarantee, however, had no relationship to his fiduciary duties and responsibilities to his client, Della J. Harper. Further, the guarantee involved no financial risk to him because he was aware of the financial responsibility of Fred Schmidt.

Second, he performed legal services in both the estate of Fred Schmidt and guardianship estate of Della J. Harper, for which he was not paid. His refusal to reconvey the residence property until compelled to do so by the court entailed an estate expense, as a result of his misconduct, in excess of his claim for legal services.

Third, Neal Clark asserts that the cash assets of both estates were fully accounted for and the estates suffered no financial loss. This contention does not take into account the legal expense involved in forcing the reconveyance of the residence property.

Fourth, he asserts that he did inventory the residence property as a part of Della J. Harper's guardianship estate assets. Had he thereafter apprised the Department of Public Assistance of the undisclosed asset and destroyed the deed, such acts would have established an intent to place Della J. Harper and the department in a status quo. However, his conduct in recording the deed and attempting to establish its validity destroyed any inference of his good faith in this regard.

Having in mind these alleged mitigating circumstances, we now consider them as applied to counts 1 and 2.

 With reference to count 1, while acting in his fiduciary capacity as attorney for his client, who was 95 years of age and incompetent to transact business, Neal Clark, being aware of these facts, took from her a deed to her residence

property, in consideration of his promise to provide for her as Fred Schmidt had previously done, and to furnish burial in conformity with her station in life. From the inception of this agreement, he successfully made her dependent upon public assistance, in total disregard of his contract to provide for her from his personal funds. None of his resources was expended for the care, support or burial of Della J. Harper. His conduct in this regard establishes "moral turpitude, [and] dishonesty . . . in the course of his relations as an attorney," in violation of Rule for Discipline of Attorneys 1A, 57 Wn. (2d) xlvi.

With reference to count 2, Neal Clark knowingly falsified the applications for public assistance, when he stated that Della J. Harper was an indigent person. When the November 4th application was made, Fred Schmidt, although in a hospital, was still obligated to support her, and, when the December 4th application was made, Clark had obligated himself to continue Schmidt's previous agreement. The fact that he later inventoried the residence property in the guardianship estate did not correct the false statements in the applications for public assistance. As a matter of fact, he recorded the deed and wrongfully contended that the consideration had been paid in full. His conduct in this regard was violative of Canon of Professional Ethics 11, RCW Vol. 0, and of his oath as an attorney.

These are the circumstances to which the standards for punishment must be applied. The punishment must be sufficient to prevent reoccurrence, to deter other practitioners from engaging in like conduct, and to restore and maintain respect for the honor and dignity of the legal profession in the State of Washington. *In re Simmons, supra.* To accomplish these purposes, both the hearing panel and the Board of Governors recommend disbarment. We agree that the conduct detailed above warrants disbarment, and therefore, adopt the recommendations of the hearing panel and the Board of Governors.

It is ordered that Neal Clark be, and he hereby is, dis-

barred from the practice of law in the State of Washington, and that his name be stricken from the roll of attorneys.

HILL, DONWORTH, FINLEY, and WEAVER, JJ., concur.

ROSELLINI, J. (dissenting)—The nature of count 3 and the evidence concerning it, which is based on hearsay and statements later repudiated, does tend to prejudice anyone reading the record, and this is amply illustrated by the tenor of the cross-examination of witnesses and of the respondent. The prejudice engendered permeates the whole record, and I cannot help but feel that it influenced the consideration given to the other counts by the trial committee and Board of Governors, and also was considered by them in determining the penalty which they recommended should be imposed upon the respondent.

There is a truism in the trial of any cause that "once a bell is rung, it cannot be unrung," or as Omar Khayyam states it in The Rubaiyat:

> "The Moving Finger writes; and, having writ,
> Moves on: nor all thy Piety nor Wit
> Shall lure it back to cancel half a Line,
> Nor all thy Tears wash out a word of it."

This court should therefore be very careful to disregard this count and the evidence introduced under it, and endeavor to treat the respondent the same as others guilty of similar misconduct have been treated.

In this case Della Harper did receive a home and good medical care during her life as was agreed by the contract between her and the respondent. All the funds coming into the respondent's possession were accounted for. None of the funds were used by the respondent for any of the services that he rendered in the probate case or in the care of Miss Harper.

Since the respondent did claim property of his client to which he was not entitled, just as did the respondent attorney in *In re Simmons*, 59 Wn. (2d) 689, 369 P. (2d) 947, the penalty imposed therein should be likewise imposed in this instance.

I would suspend the respondent for a period of one year. HUNTER and HAMILTON, JJ., concur with ROSELLINI, J.

July 11, 1963. Petition for rehearing denied.

